AMERICAN CASUALTY COMPANY, Respondent,

*v.*

RAY BALL, Petitioner.

(*Knoxville,* September Term, 1962.)

366 S. W. 2d 773.

Opinion filed April 3, 1963.

JOHN A. ARMSTRONG, Greeneville, for petitioner, Ray Ball.

H. R. SILVERS, Greeneville, and HARRY J. BRYANT, Knoxville, for respondent.

Mr. Justice Dyer delivered the opinion of the Court.

This is a Workmen's Compensation case wherein the employee Ray Ball has been awarded compensation for total and permanent disability. The judgment is against American Casualty Company insurance carrier for Ball's employer, who has appealed to this Court. In this opinion Ray Ball will be referred to as Petitioner and American Casualty Company as Defendant. Subsequent to the perfection of the appeal Petitioner died, and pursuant to agreement and by order of this Court the case has been revived in the name of the widow and surviving heirs at law of Petitioner.

This original petition filed March 5, 1962 alleged Petitioner in the course of his employment as a truck driver, while alighting from his truck on or about March 16, 1961 slipped and fell sideways across a fuel tank injuring his left hip. As a result he has serious and permanent injuries to his left hip, left leg and to his body as a whole incapacitating him from work. That prior to this accident he was 34 years old and in good health.

This original petition was amended on May 24, 1961 in which it is further alleged sometime previous to the March 16, 1961 accident Petitioner was involved in an automobile accident in Illinois receiving injuries to his chest, heart and both legs. That as a direct and proximate result of the accidental injuries sustained by the Petitioner on or about the 16th day of March 1961 he is now suffering from incurable cancer and is one hundred percent permanently and totally disabled.

The Trial Judge found Petitioner to be "suffering from a serious ailment, to wit, cancer, and that there is a causal connection between the injury and the condition this man is now physically in." The Trial Judge further found Petitioner, "had an accident, he was an able-bodied man at the time, and from that time on, certain conditions set up and that they have grown gradually worse and the court finds that his trouble arose in and grew out of the accident."

Defendant by their assignments of error raise one question to wit: whether or not there is any material evidence to show any causal connection between the injury received by Petitioner on March 16, 1961 and the disability found by the Court.

Petitioner testified on or about March 16, 1961 he was returning from a long trip, and upon arriving at a point near Harriman, Tennessee about 2:00 o'clock A.M. very tired he stopped the truck to go to the bathroom. In alighting from the truck he stepped upon the fuel tank slipping and falling on his left hip. He stated the injury received felt like something torn loose in him and for thirty or forty minutes was unable to get up, as each time he tried he would get sick. With aid he did return to his truck and about two hours later arrived at the company office in Knoxville. When the company office opened that morning he told his employer of the accident and later went to his home in Greene County arriving that afternoon and going to bed. The next day he was placed in the hospital where he was put in a boardbed with weights on his legs remaining eight or nine days. Petitioner returned to work on April 4th, but continued to suffer pain in his back and hip. On September 24th that year peti-

tioner quit of his own accord. Petitioner was paid $82.58 temporary total disability from March 18th through April 3rd, 1961. Petitioner requested in November 1961 to re-open his claim due to the accident of March 1961, and was referred to Dr. C. Sanford Carlson of Knoxville.

Petitioner testified sometime prior to the March 1961 accident he was involved in an automobile accident in Illinois receiving bruising injuries to his chest, heart and legs requiring hospitalization for five days. That at the time of the March 1961 accident he was in good health having recovered from the injuries received in the Illinois accident.

Petitioner further testified he returned to the hospital in March and May of 1962 the results of which at the time of the trial he was receiving series of 30 x-ray treatments for, as he was informed, lung cancer. He stated these treatments made him very sick and he was unable to do any work. Petitioner further stated that a short time after the accident of March 1961 he had a hurting in his chest.

Mrs. Ray Ball, wife of Petitioner testified her husband had been in good health prior to the accident of March 1961, but soon thereafter his health and ability to work had declined.

Dr. C. Sanford Carlson an orthopedic surgeon of Knoxville examined Petitioner on November 9, 1961 for pain in the left hip and filed his report on the same day, which by agreement between the parties was read into evidence. Dr. Carlson found that a part of the pain complained of in the left hip was due to a ring worm type of infection and he concluded Petitioner had suffered a contusion and subsequent hip strain when he fell in March 1961. Dr.

Carlson could find no orthopedic evidence of permanent partial disability at the time of his examination which could be associated with the injury of March 17, 1961.

Dr. Walter Hankins a radiologist of Johnson City treated Petitioner and his deposition was taken on June 13, 1962. This deposition was taken by Defendant but entered in evidence by Petitioner. It is shown a large per cent of Dr. Hankins' practice is in regard to study and treatment of cancer. Dr. Hankins first saw Petitioner on October 31, 1961 and treated him by x-ray for bursitis of the left hip. Dr. Hankins said so far as he knew this trouble with the hip was well, as Petitioner had made no further complaint in regard to his hip. Petitioner returned to Dr. Hankins on April 27, 1962 at which time it was determined he was suffering from a very malignant tumor in his right lung for which he was receiving x-ray treatments.

The following question were asked Dr. Hankins by counsel for Defendant and his answers given:

"Q. Assuming that on or about March 17, 1961, Mr. Ball stepped out of a truck that he had been driving, fell and hurt his hip and subsequently had symptoms of that injury, state whether or not, in your medical opinion, that injury or fall could have caused or accelerated the present malignant condition which you have described to us?

"A. No sir, I don't believe it would have any relationship in my opinion it would not have had. So far as we know acute trauma would not be a cause of this present condition of carcinoma of the lung—trauma from a fall—we speak of trauma such as might be caused from irritants such as tobacco,

for instance, might play a part, but we do not know what the cause of cancer is.

"Q. State whether that conclusion would also be applicable in the event that Mr. Ball had had an earlier injury in which his chest had actually been "stove in" as he put it?

"A. No, sir, I don't think that would play a part, or be a cause or a contributing cause to the production of cancer. I know of no statement in the literature to that effect in our present state of knowledge that would play a part, and I don't believe it would.

"Q. Now would you describe briefly the nature and extent of x-ray treatment that you gave Mr. Ball in October in connection with that ailment?

"A. Well we gave him three treatments over the hip several days, one in October and two in November, 1961.

"Q. State whether or not, in your opinion, those x-ray treatments would have either caused or accelerated the malignant condition which you have previously described.

"A. No sir, I feel they would have had no connection whatever.

"Q. State whether or not your last stated conclusion would be true even if shortly subsequent to these x-ray treatments, Mr. Ball for the first time felt a pain in his chest area in the general vicinity of the tumor location?

"A. No sir, in this instance we were treating a different part of the body. We treated his hip, the cancer is in the lung. I can see no connection whatever.

"Q. Is there any question as to whether the primary carcinoma of this particular case was in the lung?

"A. Near the lower portion of the middle lobe—there are three lobes—of the right lung to the best of our knowledge.

"Q. There was no element of primary carcinoma elsewhere?

"A. No sir.

"Q. Doctor, from your examination of this patient, and also from the history that you have taken, will you again give your best opinion as to the date of origin of this cancer?

"A. According to his history, he began having symtoms relative to a lesion in what he thought was a cold, cough or flu in February of 1962, and in view of the fact that this has progressed since we first examined his chest in April, I would say that the cancer had probably been present since the first of the year, and that he probably has had a malignancy for six or seven months—that is since the first of the year 1962."

This is all the evidence introduced in regard to the issue presented here on appeal. Under the evidence in this record Petitioner is totally and permanently disabled as a result of cancer in his right lung, and the Trial Judge so found. Dr. Hankins testified Petitioner was given x-ray

treatments in October and November 1961 for bursitis of the left hip, and so far as he knew this condition is well, as Petitioner had not further complained of the matter. The statement of Dr. Carlson establishes there is no orthopedic evidence of permanent disability to the hip, and Petitioner on cross-examination stated his present trouble was from the x-ray treatment of his lung.

The question then for decision is whether there is any material evidence to support the finding this accident of March 1961 caused or contributed to causing this cancer, or so accelerated or aggravated this cancer that is was a contributing cause to the shortening of the life of Petitioner.

In *Boyd v. Young,* 193 Tenn. 272, 246 S. W.2d 10 the employee Boyd reached down to pick up a box of cheese weighing about forty pounds, when he suddenly felt something snap or pop in his upper back and felt a sharp pain. Boyd was off work only a day or so, but he continued to suffer pain in his upper back, and about four months after this accidental injury of picking up the cheese it was determined he had a cancerous condition at this point in his upper back. This action under our Workmen's Compensation Statutes was upon the theory the accidental injury either caused the disability of the cancerous condition in the upper back, or aggravated and accelerated such as a previous existing condition. In this case four doctors were asked a hypothetical question which gave a full and adequate portrayal of the nature of the alleged accident, the immediate pain suffered thereafter, his ability to work, treatments that were administered, the final operation and its results, and his death following the operation. The question concluded as fol-

lows: "Could such an injury, accompanied by the sudden and immediate pain thereafter, have contributed to this young man's death?" Their answers were, "Yes, it could," * * * "It certainly could have contributed to his death in hastening affairs along," * * * "I think it would definitely have aggravated any condition that was existing or might possibly have been a cause," * * * "It is very possible and in my opinion I believe it did." The answers given by these doctors to this proper hypothetical question, even though given with the admission they do not know the cause of cancer, are more than speculation and conjecture. This is well stated in the petition to rehear in this case by a quote from the Minnesota case of *Pittman v. Pillsbury Flour Mills,* 234 Minn. 517, 48 N.W. 2d 735 as follows:

"In this case, we have been presented with a rather elaborate discussion of medical theories as to the possibility of a cancer being caused or aggravated by trauma. It was conceded by all of the doctors who were witnesses that the medical profession has incomplete knowledge concerning the causes of cancer and the factors influencing its growth and spread in the human body. The theories which the profession has developed are in large part based upon empirical studies. Since we, as judges, lay no claim to expertness in these matters, we can add nothing to the discussion, nor can we be expected to resolve those conflicts which the medical profession itself has been unable to resolve. Notwithstanding this uncertainty, we think that we are bound to treat the opinions of these doctors as something more than speculation and conjecture, which are but polite terms for unscientific guesswork."

The Court is fully aware as shown in this record under the present knowledge available to the medical profession, that no one can say even with reasonable certainty whether the injury Petitioner received to his hip caused or in any way accelerated the cancer later found in his lung; but after careful study of the testimony of Dr. Hankins we are forced to the inescapable conclusion it was the opinion of this doctor there was no causal connection between this injury and cancer. This opinion by this doctor familiar with this case is more than speculation or conjecture.

This Court in affirming the award given to the employee in the Boyd case, supra made careful note of the obvious diseased condition of the employee's upper spine at the time of the accident. The following was copied into this opinion from the finding of the trial judge.

"That it was an accident is clear to me from the proof. He was reaching in a strained position, and was lifting a box of cheese. While in this position and lifting the cheese, it is apparent that he strained or twisted himself in such a way that it injured the tissues or muscles in his back at a point between his shoulders, for he immediately grasped the back of his neck and showed that he was suffering great pain, and from this point he became progressively worse until the time of his death. He had been in excellent health all of his life until this time. It was after the accident that he became ill, *and it is significant that when he was operated on the cancer or tumor was found at the spot where he placed his hand at the base of his neck and cried out in pain.*" 193 Tenn. 272, 246 S.W.2d 10. (emphasis supplied).

While not of itself determinative of the matter it is significant to the Court in the case at bar the injury to Petitioner was to another part of the body other than where the cancer was later found. That such fact does have significance is supported in this record by the testimony of Dr. Hankins, when he was asked whether the x-ray treatments given Petitioner on his lift hip caused or accelerated the cancer in his lung his answer was, "No sir, in this instance we were treating a different part of his body. We treated the hip, the cancer is in the lung. I can see no connection whatever."

Counsel for Petitioner in his brief in support of their position cite the following testimony of Dr. Hankins:

"Q. Doctor, now passing from the causative effect as to the cause of cancer, and going to acceleration, antagonism, etc., of a pre-existing cancer, would you say that it is not possible that trauma could cause an acceleration, or aggravation of a pre-existing cancer?

"A. Assuming that he had a cancer of the lung it would be theoretically possible, but highly improbable, I think that it would play any part in the progress, assuming that he had an injury to the lung tissue itself, and not to the ribs or muscles of the chest walls."

This question is asked and answer given on the basis of a pre-existing cancer. Dr. Hankins familiar with the particular case at issue here testified in his opinion the cancer found in Petitioner's lung did not develop until the first of the year 1962. Under this testimony Petitioner did not have a pre-existing cancer at the time of the accidental injury of March 1961.

We are of the opinion and so hold there is not any material evidence upon which to sustain a judgment this accidental injury of March 16, 1961 had any causal connection with the cancer found in Petitioner's lung, and the judgment of the trial court finding Petitioner one hundred per cent totally and permanently disabled to the body as a whole is reversed.

A judgment for $159.06 was made in this case for hospital and medical expenses. We are not able to determine from the record how this figure was obtained. Petitioner by an exhibit to his testimony entered bills for hospital and medical expenses, which it is stated in the record total $1361.64. Defendants in their brief make no objection to this judgment of $159.06 and same is affirmed.

This cause is remanded for any necessary action not inconsistent with this opinion.